768 F.2d 1186
 54 USLW 2101
 Rose Eileen TRUJILLO and Patricia Trujillo,
Plaintiffs-Appellants and Cross-Appellees,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SANTA FE,
a New Mexico body corporate and politic, the City of Santa
Fe, a New Mexico municipal corporation, Eddie Armijo,
Sheriff of the County of Santa Fe, Joseph Thomas, Greg Coe,
Ernie Godsey, Robert Alarid, Sammy Garduno, James Rodriquez,
Mike B. Vigil, Severino Rivera, Carl Miller, George Carrion,
Robert Montoya, Manuel Sais, Manuel Armijo, and Joann Maier,
Defendants-Appellees and Cross-Appellants.
 Nos. 83-2320, 83-2379.
 United States Court of Appeals,
Tenth Circuit.
 July 26, 1985.
 
 Vince D'Angelo, Albuquerque, N.M., for plaintiffs-appellants and cross-appellees.
 Jonathan E. Zorn, Albuquerque, N.M., and W. Mark Mowery, Santa Fe, N.M. (Andrew M. Ives, Santa Fe, N.M., with them on brief), for defendants-appellees and cross-appellants.
 Before SEYMOUR, BREITENSTEIN and McWILLIAMS, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Rose Eileen Trujillo and her daughter, Patricia Trujillo, appeal from the dismissal of their action filed under 42 U.S.C. Sec. 1983 (1982).[1] In their complaint, the Trujillos allege that the wrongful death of their son and brother, Richard Trujillo, while incarcerated at the Santa Fe County Jail, deprived them of their constitutional right of familial association under the First and Fourteenth Amendments. Defendants, various officials and public bodies of both the City and County of Santa Fe, moved to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment on the ground that the Trujillos lacked standing. In a second motion for summary judgment, defendants argued that a settlement and release signed by the decedent's former wife and personal representative precluded any claim on behalf of Richard Trujillo. Treating the motion to dismiss as a motion for summary judgment, see Fed.R.Civ.P. 12(b), the district court concluded that the Trujillos had not alleged a constitutional right compensable under section 1983. He therefore granted both motions and dismissed the complaint. We affirm the judgment, but on different grounds.
 
 I.
 STANDING
 
 2
 As a preliminary matter, appellees continue to argue on appeal that the Trujillos lack standing to assert a claim under section 1983.[2] In support of this argument, appellees cite Dohaish v. Tooley, 670 F.2d 934 (10th Cir.), cert. denied, 459 U.S. 826, 74 L.Ed.2d 63 (1982). In Dohaish, the father of an apparent murder victim sued the district attorney for failure to prosecute his son's killer. We affirmed dismissal of the suit both because the district attorney was immune, and because the father had asserted no personal constitutional injury and therefore lacked standing. Because the alleged discrimination was not directed at the father, he had suffered no violation of his own civil rights. Id. at 936. Here, the Trujillos clearly allege an injury to their own personal constitutional rights. These rights in no way derive from the decedent's personal rights, nor do the Trujillos sue on his behalf.[3] Therefore they have standing to assert their own claim under section 1983. See Bell v. City of Milwaukee, 746 F.2d 1205, 1241 (7th Cir.1984); Logan v. Hollier, 711 F.2d 690, 690-91 (5th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984); White v. Talboys, 573 F.Supp. 49, 51 (D.Colo.1983); cf. Jones v. Hildebrant, 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977) (per curiam); Angola v. Civiletti, 666 F.2d 1, 3 (2d Cir.1981). Consequently, the sole issue on appeal is whether the Trujillos allege a deprivation of those constitutional rights compensable under section 1983.
 
 II.
 THE RIGHT OF FAMILIAL ASSOCIATION
 
 3
 Rose Trujillo and her daughter claim that Richard Trujillo's wrongful death "deprived [them] of their First and Fourteenth Amendment rights to associate with, to enjoy the company of, to have the familial association with, and communication with, Richard Trujillo, deceased." Rec., vol. I, at 3. The Supreme Court has recently clarified the constitutional sources of associational freedoms. In Roberts v. United States Jaycees, --- U.S. ----, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Court held that application of the Minnesota Human Rights Act to compel the Jaycees to accept women as regular members did not infringe members' freedom of intimate association or their freedom of expressive association. While the Court anchored the freedom of expressive association in the First Amendment, id. 104 S.Ct. at 3252, it identified the freedom of intimate association as "an intrinsic element of personal liberty," id. at 3251. See also Wise v. Bravo, 666 F.2d 1328, 1336-38 (10th Cir.1981) (Seymour, J., concurring). Although elements of each associational freedom may coincide in the same claim, see id. at 3249-50, it is the freedom of intimate association which primarily concerns us in this case.[4]
 
 
 4
 In describing this constitutionally protected liberty, the Court recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State...." Id. at 3249. Included in that category are "[f]amily relationships, [which] by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life." Id. at 3250.
 
 
 5
 Many courts have recognized liberty interests in familial relationships other than strictly parental ones. See, e.g., Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion) (zoning ordinance could not prohibit grandmother from living with her grandsons who were cousins); Smith v. Organization of Foster Families, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (foster parents have liberty interest in relationship with foster children) (dicta); Wilson v. Taylor, 733 F.2d 1539 (11th Cir.1984) (interference with dating relationship actionable under Sec. 1983); Rivera v. Marcus, 696 F.2d 1016, 1024-25 (2d Cir.1982) (half-sister who was also foster mother had protected interest in siblings); Drollinger v. Milligan, 552 F.2d 1220, 1226-27 (7th Cir.1977) (deprivation of grandfather's relationship with grandchild actionable under Sec. 1983). Moreover, the freedom of intimate association protects associational choice as well as biological connection. See Jaycees, 104 S.Ct. at 3249-51; see generally, arst, "The Freedom of Intimate Association," 89 Yale L.J. 624 (1980).
 
 
 6
 In a case similar to our own, the Seventh Circuit recently upheld the right of parents to recover under section 1983 for the wrongful death of an adult child, but rejected the claims of the decedent's brothers and sister. See Bell, 746 F.2d at 1244-47. Noting a lack of specifically analogous cases which would support constitutional protection to the siblings, the Court found most disturbing the lack of a "principled way of limiting such a holding to the immediate family or perhaps even to blood relationships." Id. at 1247.
 
 
 7
 Although the parental relationship may warrant the greatest degree of protection and require the state to demonstrate a more compelling interest to justify an intrusion on that relationship, we cannot agree that other intimate relationships are unprotected and consequently excluded from the remedy established by section 1983.[5] We therefore hold that Rose and Patricia Trujillo had constitutionally protected interests in their relationship with their son and brother, Richard Trujillo. See Wise, 666 F.2d at 1336-38 (Seymour, J., concurring); Mattis v. Schnarr, 502 F.2d at 588, 593-95 (8th Cir.1974), appeal following remand vacated on other grounds sub nom., Ashcroft v. Mattis, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977); Jones v. McElroy, 429 F.Supp. 848, 851-53 (E.D.Pa.1977); see also Franz v. United States, 707 F.2d 582, 594-602 (D.C.Cir.1983); Rivera, 696 F.2d at 1022-26. We now consider what circumstances would yield a deprivation of this associational right so as to create a cause of action under section 1983.
 
 III.
 SECTION 1983
 
 8
 Section 1983 provides an enforcement remedy for one who is deprived under color of state law of "any rights, privileges, or immunities secured by the Constitution." Although this section does not require a specific state of mind for actionability, see Parratt v. Taylor, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), a court must examine closely the nature of the constitutional right asserted to determine whether a deprivation of that right requires any particular state of mind, McKay v. Hammock, 730 F.2d 1367, 1373 (10th Cir.1984) (en banc). For instance, it is well established that deprivations of equal protection require proof of discriminatory intent on the part of the state actor, see, e.g., Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), while deprivations under the Eighth Amendment require a showing of deliberate indifference, see, e.g., Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Moreover, some deprivations of First Amendment rights require proof that the state's action was intended to repress an individual's protected speech or association. See, e.g., Mt. Health City School District v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); Wilson, 733 F.2d at 1542-43; cf. Angola, 666 F.2d at 4.
 
 
 9
 We believe that freedom of expressive association provides the most appropriate analogy for freedom of intimate association.[6] As the Court noted in Jaycees, "[t]he intrinsic and instrumental features of constitutionally protected association may, of course, coincide." 104 S.Ct. at 3249. These common features and values may best be safeguarded by similar doctrinal analysis.[7] Despite different constitutional roots, both interests protect interpersonal relationships from unwarranted intrusion by the state. Moreover, most cases that have protected expressive or intimate associational interests have done so when the state has directly interfered with these relationships. See, e.g., Moore, 431 U.S. 494, 97 S.Ct. 1932; Hardwick v. Bowers, 760 F.2d 1202 (11th Cir.1985); Wilson, 733 F.2d 1539; Rivera, 696 F.2d 1016; Morrison v. Jones, 607 F.2d 1269 (9th Cir.1979), cert. denied, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980); Drollinger, 552 F.2d 1220.
 
 
 10
 For these reasons, we conclude that an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983. We realize that other courts have not imposed any state of mind requirement to find a deprivation of intimate associational rights. See e.g., Bell, 746 F.2d 1205; Mattis, 502 F.2d 588; Jones, 429 F.Supp. 848. However, their rationale would permit a section 1983 claim by a parent whose child is negligently killed in an automobile accident with a state official, a result expressly disapproved in Parratt, 451 U.S. at 544, 101 S.Ct. at 1917. As the Seventh Circuit recognized in Bell, we must provide a logical stopping place for such claims. 746 F.2d at 1205; see also, Parratt, 451 U.S. at 544, 101 S.Ct. at 1917. Yet, under Bell, a deliberate deprivation of any intimate associational right other than that of a parent, spouse, or child would not be actionable under section 1983. We believe that this result is irreconcilable with the analysis of intimate associational rights in Jaycees. The Court recognized there that these rights extend to intimacy in a variety of contexts. Section 1983 accordingly provides a remedy for improperly motivated state conduct in all of these contexts.
 
 
 11
 In this case, the Trujillos' complaint does not allege intent on the part of defendants to deprive them of their protected relationship with their son and brother, Richard Trujillo. Although the complaint alleges intent with respect to Richard's rights, this intent may not be transferred to establish intent to deprive his mother and sister of their constitutionally protected rights. The alleged conduct by the State, however improper or unconstitutional with respect to the son, will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right. Because the Trujillos did not allege such intent, their complaint was properly dismissed for failure to state a constitutional claim.
 
 
 12
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Defendants originally filed a cross-appeal for attorneys fees, but abandoned it at oral argument
 
 
 [2]
 The district court did not address this issue
 
 
 [3]
 For the same reason, we do not address the second order granting summary judgment for defendants based on the release signed by the decedent's former wife. The release presents an issue only if the Trujillos allege a derivative right on the decedent's behalf. Cf. Rosa v. Cantrell, 705 F.2d 1208, 1210 (10th Cir.1982). Nowhere do the Trujillos make such an allegation
 
 
 [4]
 The Trujillos allege a deprivation of their First and Fourteenth Amendment rights. Although this allegation appears to refer to the First Amendment as incorporated to the states through the Fourteenth Amendment, we must read the pleadings in a motion for summary judgment in the light most favorable to the opponent of the motion. McKay v. Hammock, 730 F.2d 1367, 1371 (10th Cir.1984) (en banc); Otteson v. United States, 622 F.2d 516, 519 (10th Cir.1980). We read the Trujillo allegation of a right of familial association as an assertion of the liberty interest discussed in Roberts v. United States Jaycees, --- U.S. ----, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Prior to Jaycees, some courts had interpreted the First Amendment to protect similar intimate relationships. See, e.g., Wilson v. Taylor, 733 F.2d 1539, 1542-44 (11th Cir.1984) (dating). This explains the allegation as framed by the Trujillos
 
 
 [5]
 We note that the familial relationships in this case do not form the outer limits of protected intimate relationships. As the Court in Jaycees further explained, "a broad range of human relationships ... may make greater or lesser claims to constitutional protection ...," requiring "a careful assessment of where [a particular] relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments." 104 S.Ct. at 3251. Those characteristics which would indicate a protected association include smallness, selectivity, and seclusion. Id. at 3250. We need not make such an assessment here, since the relationships at issue clearly fall within the protected range
 
 
 [6]
 We also observe that liability for the analogous common law tort of interference with the marital relationship requires intent on the part of the defendant. Merely negligent conduct, or even an intentional act directed at another end with an incidental effect on the relationship is not sufficient. The tort must be intentional, directed at the relationship itself. W.L. Prosser & W.P. Keeton, Torts, ch. 22, Sec. 124, at 920-21 (5th ed. 1984). Another analogous common law tort, invasion of privacy, see Bell v. City of Milwaukee, 746 F.2d 1205, 1206, 1241 (7th Cir.1984), also generally requires intentional action by the tortfeasor, see Prosser, ch. 20, Sec. 117, at 854
 
 
 [7]
 Specifically, the freedom of intimate association draws support from the First Amendment values of self-expression and identification. See generally, Karst, "The Freedom of Intimate Association," 89 Yale L.J. 624 (1980). As Professor Karst recognizes, "the First Amendment can provide analogies and perspectives that will be helpful when the courts evaluate substantive due process claims to the freedom of intimate association." Id. at 655. Since the First Amendment requires a court to determine whether the state has acted unjustifiably to prevent the expression of a particular idea in the context of intimate association, we should ask if the state has acted to discourage the expressive aspects of a particular association. See id. at 658-59