**Janice C. BECK, et al., Plaintiffs,**

v.

**Alfredo CALVILLO, et al., Defendants.**

**Myrtle A. WILLIAMS, et al., Plaintiffs,**

v.

**Alfredo CALVILLO, et al., Defendants.**

**Civ. A. Nos. 83–2094–S, 83–2095–S.**

United States District Court,
D. Kansas.

May 19, 1987.

John Elliott Shamberg, Lynn R. Johnson, David R. Morris, Ruth M. Benien, Shamberg, Johnson, Bergman & Goldman, Chartered, Overland Park, Kan., for plaintiffs.

Steven L. Ruddick, John C. McFadden, Sp. Asst. Atty. Gen., Kansas City, Kan., for the State of Kan., Charles E. Simmons, Chief Legal Counsel, Dept. of Corrections, Robert T. Stephan, Atty. Gen., Leon J. Patton, James D. Hall, David D. Plinsky, Bruce E. Miller, Carl A. Gallagher, Asst. Attys. Gen., Timothy G. Madden, Sp. Asst. Atty. Gen., Dept. of Corrections, Topeka, Kan., Ronald W. Nelson, Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant Jack C. Pearson's motion to dismiss and/or for summary judgment. Defendant Jack C. Pearson is the Director of the University of Kansas Medical Center Police Department. He remains in this case in his individual capacity only. This action arises out of the tragic event which took place in the Kansas University Medical Center on March 20, 1981, resulting in the death of Marc Beck, M.D. and Ruth Rybolt. Plaintiffs bring claims against Jack Pearson for his alleged failure to protect the deceased from Bradley Boan's acts of violence.

In the Pretrial Order, the plaintiffs contended that the defendant Jack Pearson, as an employee and administrative head responsible for security at the University of Kansas Medical Center, deprived the plaintiffs Marc R. Beck, M.D., Ruth Rybolt and Ruby Shannon of the rights, privileges and immunities guaranteed to them by the United States Constitution. These rights include the fourteenth amendment due process right to be free from bodily harm, injury or death. Plaintiffs further contend that the acts, errors and omissions of Jack Pearson were negligent and that such negligence was the direct and proximate cause of their injury and damages. Defendant Jack Pearson has filed this motion for summary judgment on several grounds. The court will first address defendant Pearson's motion for summary judgment as to the claims of Marcia Beck, Pamela Cameron and Deanice Beck-Handler as siblings of Marc Beck and the claims of Harold Williams, Harrison Williams, Jr., Harry Williams and Ruby Shannon, as siblings of Ruth Rybolt. Defendant Pearson claims that these plaintiffs state no cause of action under section 1983 for their deprivation of the deceased's life. Defendant Jack Pearson also seeks to have the claims of Janice C. Beck, the surviving mother of Marc Beck, and Myrtle Williams, the mother of decedent Ruth Rybolt, brought under 42 U.S.C. § 1983 dismissed as defendant contends that no constitutional deprivation has been stated. The court notes that in the Pretrial Order dated April 17, 1987, the plaintiffs named above state that defendant Jack Pearson was negligent and that his actions or omissions violated *their* civil rights. They claim their rights were violated when he failed to insure that proper security measures were in place at the University of Kansas Medical Center emergency room.

In response to defendant's motion, plaintiffs claim that they were deprived of their fundamental right of liberty and due process interests in a continued family relationship and the family's enjoyment of life together.

After reviewing the case law cited by the parties, the court finds that the recent Tenth Circuit decision in *Trujillo v. Board of County Commissioners,* 768 F.2d 1186 (10th Cir.1985), is controlling on this issue. In *Trujillo,* the Tenth Circuit recognized that a cause of action can be stated under section 1983 for deprivation of familial association. *Id.* at 1188. The court cited a decision by the Seventh Circuit which upheld the rights of parents to recover under section 1983 for the wrongful death of an adult child. *Id.* at 1189 (citing *Bell v. City*

*of Milwaukee,* 746 F.2d 1205, 1241 (7th Cir.1984)).

In *Trujillo* the court did not define the bounds that the right of association carries with it. "Although the parental relationship may warrant the greatest degree of protection and require the state to demonstrate a more compelling interest to justify an intrusion on that relationship, we cannot agree that other intimate relationships are unprotected and consequently excluded from the remedy established by section 1983." 768 F.2d at 1189. The Tenth Circuit held that there was a constitutionally protected interest in the relationship between a parent and son and between siblings. The court then went on to consider what circumstances would constitute a deprivation of this associational right so as to create a cause of action under section 1983. The court concluded its analysis by citing to a necessary element of a section 1983 claim that "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983." *Id.* at 1190. The Tenth Circuit cited other court decisions which had not imposed any state of mind to find a deprivation of such right. The court found that such rationale was not persuasive. *Id.* The court found that there should be some limit to claims brought under section 1983. The Tenth Circuit noted that the court's decision in *Bell* would permit a section 1983 claim brought by a parent whose child is negligently killed in an automobile accident by a state official. The court found such a holding to be directly contrary to the decision in *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). The court found that the alleged conduct by the state, however improper or unconstitutional with respect to the deceased person, will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right. *Trujillo,* 768 F.2d at 1190. *See, e.g., Trejo v. Wattles,* 636 F.Supp. 992, 996–97 (D.Colo.1985) (the court distinguished where there is direct intent to deprive and a transferred intent to deprive.)

After reviewing the record presented, the court finds that the allegations of the Pretrial Order and the exhibits before the court do not establish the necessary intent of the defendants to deprive the plaintiffs of their protected relationship with the deceased. Although the court recognizes that the Pretrial Order states that "the acts and omissions of the defendant Jack Pearson were grossly negligent and were carried out with such recklessness and wanton disregard and intentional and deliberate interference to their probable and foreseeable consequences," the court cannot see how this alleged conduct by Pearson, however improper, constitutes an unconstitutional deprivation of the right of familial association. There are no allegations that such an intent was directed at the plaintiffs. The court further finds that the only evidence of intent would have to be the intent of Boan and his intent could not be transferred to establish intent on the part of defendant Pearson.

The court therefore finds that Pearson's motion for summary judgment on the claims brought pursuant to 42 U.S.C. § 1983 on behalf of Marcia Beck, Pamela Cameron and Deanice Beck–Handler as siblings of Marc Beck should be granted. The court further finds that Pearson's motion for summary judgment on the claims of plaintiff Harold Williams, Harrison Williams, Jr., Harry Williams, and Ruby Shannon under section 1983 as siblings of Ruth Rybolt should be granted. The court further finds that Pearson's motion for summary judgment on the claims of Janice C. Beck and Myrtle Williams, based on their parental rights under section 1983 should be granted for failure to state a claim upon which relief can be granted.

The court will next address defendant Jack Pearson's contention that plaintiffs' claims against him should be dismissed in his individual capacity on the basis of eleventh amendment immunity. Defendant claims that the allegations made against him are actions taken as official acts and are subject to eleventh amendment immunity. Defendant states that the depositions support a finding that all the decisions made by defendant Pearson with respect to

protection and security were clearly within his authority and responsibility. Defendant questions how actions taken as an individual wholly outside the scope of employment can constitute adequate action under color of state law for purposes of section 1983.

This court addressed the eleventh amendment issue in an earlier decision filed on February 10, 1984. *See Beck v. Kansas University Psychiatric Foundation,* 580 F.Supp. 527, 537–39 (D.Kan.1984). In its earlier opinion, the court stated that "[a] claim against a state officer in his individual capacity may proceed on a theory that an officer acted beyond the scope of his authority or that, if he acted within his authority, such authority was unconstitutional." *Id.* (citing *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982)). The court found, however, that it would not make a premature decision whether to dismiss the complaint against the individual state officials. Plaintiffs claim that the inaction of Jack Pearson in the face of direct knowledge of the dangers presented in the University of Kansas Medical Center emergency room was outside the scope of his office and authority as Security Director. The plaintiffs claim that he acted outside the scope of his authority by virtue of the knowledge he possessed as to prior incidents involving violent and dangerous conduct by mental patients and by his failure to take minimal steps necessary to assure adequate protection.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

■ While the court does not purport to rule on the merits of plaintiffs' claim, the court finds that plaintiffs have sufficiently cited facts which indicate that the security personnel of K.U. Medical Center did have knowledge of mentally disturbed patients entering the emergency room, including prior incidents involving Bradley Boan. They were also aware of the risks to others by virtue of these patients' presence at the K.U. Medical Center. The record in this case reveals that a criminal or security report was filed on May 5, 1977 by Sgt. Gerald Darner after Boan had pulled a handgun on a victim at the K.U. Medical Center. Bradley Boan was arrested and subsequently convicted of a felony for his actions on the premises at K.U. Medical Center on May 4, 1977. The deposition of Jack Pearson also indicates that he had some concerns about the depositing of violent mental patients at the emergency room. Thus, the court finds that it must deny Jack Pearson's motion for summary judgment on the grounds that plaintiffs have proffered sufficient evidence to overcome the motion for summary judgment on the grounds that even if he was acting within his authority, such authority may be found to be unconstitutional.

The court further finds that the plaintiffs' suit against Jack Pearson in his individual capacity is not barred by the eleventh amendment even if the judgment rendered against him, if any, is to be paid by the state. In *Barger v. State of Kansas*, 620 F.Supp. 1432, 1438 (D.Kan.1985), the Honorable Earl O'Connor held that Kansas' statute for indemnification (in that case K.S.A. 75–6116) did not present an eleventh amendment bar to section 1983 suits against state officials in their individual capacities. The court found that "[t]o hold otherwise would allow states, by passing indemnity statutes, to use sovereign immunity as a defense for all persons sued in their individual capacities under section 1983." *Id.* at 1438 [citations omitted]. The court reasoned that such a holding would have the incongruous result of creating a special fund to compensate victims of civil rights violations, but denying payment to the intended beneficiaries because they sought relief in the federal courts. *Id.* (citing *Downing v. Williams*, 624 F.2d 612, 626 (5th Cir.1980), *vacated on other grounds*, 645 F.2d 1226 (1981); *Palmer v. Penn Ohio Road Materials, Inc.*, 470 F.Supp. 1199, 1203 (W.D.Pa.1979)). Accordingly, this court holds that K.S.A. 75–6109 does not present an eleventh amendment bar to section 1983 suits against Jack Pearson in his individual capacity. Thus, summary judgment on plaintiffs' section 1983 claims against defendant Jack Pearson in his individual capacity is therefore denied.

■ Defendant Pearson also claims that the Due Process Clause of the fourteenth amendment does not provide grounds for a section 1983 claim based on negligence. Plaintiffs concede that the United States Supreme Court decision in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), a case cited by the defendant, definitively holds that a section 1983 claim will not stand on a claim of mere negligence. "Where a government official's act causing injury to life, liberty or property is merely negligent, 'no procedure for compensation is *constitutionally* required.'" *Id.* 474 U.S. at 333, 106 S.Ct. at 666, 88 L.Ed.2d at 669 (quoting *Parratt v. Taylor*, 451 U.S. 527, 548, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (1981) (Powell, J., concurring in result) (emphasis added)). The plaintiffs contend, however, that more than mere negligence has been alleged, including claims for gross negligence, wanton and willful behavior, and reckless disregard for the safety of others.

In *Daniels*, the court found that the decision before the court afforded the court no occasion to consider whether something less than intentional conduct, such as recklessness or gross negligence is enough to trigger the protections of the Due Process Clause. *Id.* 474 U.S. at 334, n. 3, 106 S.Ct. at 667, n. 3, 88 L.Ed.2d at 670 n. 3. More recent district and appellate courts have allowed claims under section 1983 where there are allegations of gross negligence and willful, reckless or intentional conduct. *See Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir.1986); *Apodaca v. Rio Arriba County Sheriff's Dept.*, 647 F.Supp. 752, 754 (D.N.M.1986). After reviewing the submitted exhibits in this case, the court finds that it cannot definitively state that no cause of action is stated under section 1983. The plaintiffs' allegations and the record demonstrate sufficient evidence to infer that the actions of Jack Pearson may establish gross negligence and willful, reckless and wanton conduct on his part. The court finds that based on the record presented, it cannot grant Pearson's motion to dismiss or a motion for summary judgment as to plaintiffs' section 1983 claims against him on this ground. The court does note that their section 1983 claims will be viable only to the extent that they are not based on allegations of mere negligent conduct.

■ Defendant Jack Pearson argues that the required element of state action for claims brought under section 1983 has not been established. The court agrees with the defendant that the plaintiffs must show that the state is responsible for the specific conduct of which the plaintiff claims. *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). Two elements are needed to state a cause of action under 42 U.S.C. § 1983: (1)

deprivation of a constitutional right; and (2) the action was taken under "color of state law." *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980). In *Blum*, the Supreme Court noted that the factual setting of each case would be significant and should be considered on an individual basis. *Id.* In *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982), the court held that there is a constitutional right not to be murdered by a state officer, but there is no right to be protected by the state against being murdered by criminals or mad men. The court did find that "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an act of tortfeasor as if it had thrown him into a snake pit. *Id.*" *Id.* at 618.

■ This court recognizes that a growing number of courts have wrestled with this issue, answering the question whether there has been a constitutional violation with, for the most part, a qualified no. *See Estate of Gilmore v. Buckley*, 787 F.2d 714, 719 (1st Cir.1986) (citations omitted). In *Buckley*, the court noted that both the Supreme Court decision in *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) and various other circuit court decisions have indicated "that in some special circumstances, where a state has assumed a 'special custodial or other relationship' in respect of a particular person, the state's failure to protect that person might implicate the due process clause." *Id.* at 720 (citing *Fox v. Custis*, 712 F.2d 84, 88 (4th Cir.1983)). The First Circuit then cited cases which held that there existed a special relationship between the state and the plaintiff giving rise to an affirmative duty of care or protection under the fourteenth amendment. 787 F.2d at 720–721.

In *Ellsworth v. City of Racine*, 774 F.2d 182, 186 (7th Cir.1985), one of the cases cited, the court held that a special relationship may be created between a municipal employee and a municipality by virtue of the employment relationship. The court found that in such a case, a municipality would have a constitutional duty to provide elementary protective services to the employee. The court noted, however, that given the facts in that case, the city had only assumed a limited special relationship providing police officer assistance during certain periods of the day. The city did not have a constitutional duty to protect Ms. Ellsworth. The court also noted that the city did not harm Ms. Ellsworth, an unknown vindictive criminal did. The court found that section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. *Id.* at 186.

The record in the instant case indicates that Marc Beck was in the K.U. Medical Center emergency room on March 20, 1981 in his capacity as a resident of the Department of Medicine. Miss Rybolt had escorted her mother to the emergency room. The record further indicates that the K.U. Medical Center Security was aware and concerned over the practice of allowing mentally ill and often violent patients to enter the emergency room. The evidence further indicates that K.U. Medical Center Police Department was aware that Bradley Boan had posed a threat to people at the Center in the past. In fact, Boan was incarcerated due to his threats to a psychiatrist at the K.U. Medical Center in 1977. In an analogous case, *Estate of Gilmore v. Buckley*, 787 F.2d 714, the court found that at least some of the defendants in that case knew or should have known that Pendergast posed a special danger to the deceased. Irrespective of that knowledge, the court found that the state did nothing to render Gilmore any more or less capable of defending herself from a violent attacker than any other member of the general public. The court found that the state played no part in creating the threat that Pendergast posed to the deceased. The court concluded stating that Pendergast's murderous design was independently conceived and executed and the state neither condoned nor encouraged his behavior. *Id.* at 721–22. They reasoned:

For there to be a special relationship implicating the fourteenth amendment,

we believe the state must be more directly implicated than it was here in the events causing the victim's death—as, perhaps (although we need not decide) when the state, by exercising custody or control over the plaintiff, effectively strips her of her capacity to defend herself, or affirmatively places her in a position of danger that she would not otherwise have been in.

*Id.* at 722. Similarly, this court cannot find that a special relationship existed between the deceased and the defendant Jack Pearson implicating the fourteenth amendment. Even though the K.U. Medical Center Police Department was aware of incidents of violence, it was not an absolute insurer of the safety of the public at its facility. The Kansas University Medical Center had no knowledge of Boan's intent to seek revenge or even of his release from the Kansas State Penitentiary. While the record supports plaintiffs' allegations of negligence or insufficient security measures, Boan's acts can not be deemed to be under color of state law. Nor can the inaction of Pearson be considered as creating the threat Boan posed to the deceased Beck and Rybolt. The court therefore finds that Jack Pearson's motion for summary judgment on plaintiffs' claims under section 1983 should be granted for failure to state the requisite element of "state action." Accordingly, the court finds it unnecessary to address the other arguments of the defendant under plaintiffs' section 1983 claims.

■ The court will next address plaintiffs' claims against Jack Pearson under the Kansas Tort Claims Act. Defendant Jack Pearson contends that he is immune from suit based on the statutory exceptions to liability contained in K.S.A. 75–6104. Specifically, defendant claims that he is immune from liability on the basis of the "police protection" exception provided by K.S.A. 75–6104(m). K.S.A. 75–6104(m) reads: "A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from: (m) failure to provide, or the method of providing, police or fire protection." *Id.*

Plaintiffs make the following allegations: that defendant Pearson failed to (1) disarm individuals in the emergency room with weapons, (2) restrain an individual in the emergency room who posed a danger to others, (3) place security provisions within the emergency room, and (4) establish other protocol that requires employees to observe people entering the facility or have other type of security officers on guard in the emergency room.

Security at the Medical Center is maintained by University police officers as provided by K.S.A. 76–726. That statute states that University police officers shall have the power and authority of law enforcement officers on property owned or operated by the state educational institution. In the performance of their duties, such officers have the same rights, protections, and immunities afforded to other law enforcement officers. *Id.* In the companion state court case, *Beck and Williams v. Kansas Adult Authority,* 241 Kan. 13, 735 P.2d 222 (1987), the Kansas Supreme Court held that the determination by the Kansas University Medical Center Police Department of how to provide police protection is immunized under K.S.A. 75–6104(m). The court further found that the Medical Center was not liable due to the methods it adopted for police protection. The court definitively stated that if the officers at the Medical Center were aware of a risk of injury from Boan, any duty to warn would have been a law enforcement or police protection function. *Id.* at 22. The Kansas Supreme Court found that it would be a function of the University police to implement a warning system effective in warning all individuals in the Medical Center. The court found, however, that nothing in the petitions indicated that Boan was a patient or visitor in the Medical Center from the time of his release from the penitentiary until the fatal day.

While the court recognized that the Medical Center had received threats of violence by Boan years before the present incident, there was no claim that the University police or other employees of the Medical Center knew or should have known immediately prior to the March 20, 1981 shooting incident, that Boan was armed and ap-

proaching the emergency facility. At 22. Thus, the Kansas Supreme Court concluded that "both the duty to protect and the duty to warn, on the facts alleged, thus fall within the police protection exception, and we hold that the trial court was correct in finding the Medical Center immunized from liability pursuant to K.S.A. 75–6104(m)." *Id.* This court finds that the reasoning of the Kansas Supreme Court is persuasive. An earlier case, *Hopkins v. State,* 237 Kan. 601, 702 P.2d 311 (1985) is also instructive. The decision in *Hopkins* defined the limits to which the police protection exception could be extended. The court found that a law enforcement officer who acts maliciously or wantonly fails to exercise the reasonable and ordinary care and diligence required of a law enforcement officer, acts outside the protection afforded by the act. *Id.* at 611, 702 P.2d 311. The court noted that in an action against a law enforcement officer, expert testimony is ordinarily required to establish that the officer acted maliciously or wantonly while the officer was engaged in his duties. The court then applied the common knowledge exception, which is applicable if the officer's conduct is so obviously lacking in reasonable care and the conduct is so negligent that the malicious or wanton conduct causing the injury would be apparent to and within the general experience of the public. *Id.* The court found that this consideration must be taken into account prior to ruling on a motion for summary judgment.

This court recognizes that not all activities by the state of Kansas are automatically "police protection" functions just because law enforcement or police officers perform them. *See Jackson v. City of Kansas City,* 235 Kan. 278, 292, 680 P.2d 877 (1984). In *Jackson* the court found that the police protection exception is aimed at basic matters such as the type and number of police cars considered necessary for the operation, how many personnel may be required, the placement and supply of equipment and the selection of equipment options. The court opined that a city would be immunized for such claims as burglary if it could have been prevented if additional police cars had been patrolled. *Id.* at 292, 680 P.2d 877.

After reviewing the record and the applicable case law, especially the decision by the Kansas Supreme Court in *Beck and Williams v. Kansas Adult Authority,* 241 Kan. 13, 735 P.2d 222 the court finds that the alleged conduct of Jack Pearson falls within the police protection exception provided by K.S.A. 75–6104(m) and thus Jack Pearson is immune from liability on this ground.

The court expresses its shock and horror at the tragic events resulting in the deaths at the Kansas University Medical Center. In rendering its decision, the court in no manner seeks to condone the conduct of Jack Pearson or the lack of security at the Kansas University Medical Center at the time of the tragedy. The court recognizes that nothing will compensate the plaintiffs for their loss and grief. Unfortunately, the law does not lessen the pain by providing a remedy for the plaintiffs' claims. This court is without the power to create a remedy where none exists.

IT IS BY THE COURT THEREFORE ORDERED that defendant Jack Pearson's motion for summary judgment on plaintiffs' section 1983 and state law claims is hereby granted.