**Carlos SMITH, Plaintiff,**

v.

**D. Fred ELEY, et al., Defendants.**

**Civ. No. 86–C–0154G.**

United States District Court,
D. Utah, C.D.

Dec. 29, 1987.

Brian Barnard, Salt Lake City, Utah, for plaintiff.

Jody K. Burnett, Robert C. Keller, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on October 9, 1987 pursuant to the Summit County defendants' Motion for Summary Judgment. Summit County Sheriff D. Fred Eley ("Eley"), and Summit County Deputy Sheriffs Joe Offret ("Offret") and Carey Yates ("Yates") were represented by Jody K. Burnett and Robert C. Keller. Carlos Smith was represented by Brian Barnard. The parties presented oral argument and submitted legal memoranda, after which the court took the matter under advisement. Being now fully advised, the court sets forth its Memorandum Decision and Order.

## BACKGROUND

This lawsuit arises from the alleged abduction of Shannon Smith from the home and lawful custody of her father Carlos Smith. Carlos and Peggy Smith were divorced on June 16, 1983. The divorce decree awarded custody of the couple's son, Cody, to Carlos, and awarded custody of their daughter, Shannon, to Peggy. In January 1984, Peggy was experiencing personal and financial problems. She called Carlos and asked him to take care of Shannon for a period of time. Carlos agreed. In April or May of the same year, Peggy called Carlos and said she would like to retrieve Shannon. In response, on May 7,

1984, Carlos petitioned the Seventh Judicial District Court for Uintah County for a temporary custody order which the court granted ex-parte. The court also issued an order to show cause why the temporary award should not be made permanent.

On May 11, 1984, Peggy Smith came to Summit County to retrieve Shannon. Peggy somehow enlisted the help of deputy sheriffs Offret and Yates from the Summit County Sheriff's Office. The parties dispute whether Peggy knew that Carlos had been awarded temporary custody. However, it is undisputed that she did not advise the deputy sheriffs that Carlos had temporary custody of the children. Peggy apparently presented the deputy sheriffs with a divorce decree, valid on its face, granting her custody of Shannon.

Both officers accompanied Peggy to Carlos Smith's home. There is considerable dispute concerning the events occurring thereafter. Shannon Marie Smith, a 14-year old stepsister of Shannon Smith, was babysitting Shannon. Shannon Marie tried to advise Peggy, and the deputy sheriffs, that Carlos had been granted temporary custody but Shannon Marie was unable to locate the Order. The deputy sheriffs made some attempt to ascertain the validity of Shannon Marie's claim by telephoning the Summit County Attorney who was not available. Sometime thereafter Summit County Sheriff D. Fred Eley telephoned Offret and Yates at the Carlos Smith residence and conversed with them. Defendants contend that in this conversation Eley advised Offret and Yates that if there was no paper work directing them to act, they were not to interfere in the situation, and were only to keep the peace. Defendants contend they did just that and nothing more. Plaintiff, on the other hand, contends that Eley directed his deputies to assist in removing Shannon, and that the deputy sheriffs' involvement was active and extensive. In particular, plaintiff contends that Offret and Yates announced to Shannon Marie that Peggy Smith could take Shannon and leave, and that Offret and Yates physically helped control Shannon and left the residence with Peggy. Since this matter is before the court on a

motion for summary judgment, the court must resolve all such disputes against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## ANALYSIS

1. *Child Custody—Failure to State a Claim*

■ Defendants' first line of argument in support of their motion for summary judgment is that a claim based on a child custody battle cannot be stated under § 1983. Defendants argue that matters involving family relationships are uniquely matters of state law outside federal jurisdiction, citing *Wise v. Bravo*, 666 F.2d 1328, 1332 (10th Cir.1981). In *Wise*, the Tenth Circuit held that a trial court did not err in dismissing a father's § 1983 claims for interference with his visitation rights. Plaintiff rightly notes that since the challenge in *Wise* was for interference with *visitation* rights and not *custodial* rights, *Wise* may be distinguished from and does not control this case. However, the Tenth Circuit's analysis in *Wise* is relevant to this court's determination of whether plaintiff has stated a claim in this case. The *Wise* court notes that while federal decisions recognize that the parent-child relationship is a fundamental interest requiring close Due Process and Equal Protection scrutiny,

> there is no substantive federal constitutional, statutory or common law governing family relationships, including matters of custody and visitation rights between parents and children. The substantive aspect of the subject of family law and domestic relations is one uniquely within the province of the respective states. The state's power to legislate, adjudicate and administer all aspects of family law, including determinations of custodial and visitation rights is subject to scrutiny by the federal judiciary within the reach of the Due Process and/or Equal Protection Clauses of the Fourteenth Amendment.

*Id.* at 1332. This case, however, is not a custody dispute. The state has exercised

its power to determine custodial rights between Carlos Smith and Peggy Smith Hardman, and has granted Carlos custody of both children.

Although plaintiff couches his claim in terms of both substantive and procedural due process, it really sounds in procedural due process. Following the *Wise* analysis, it is clear that, had the State of Utah wished to do so, it could have awarded Peggy Smith custody of Shannon Smith without impermissibly infringing Carlos Smith's liberty interest guaranteed by the Fourteenth Amendment. Further, the State, as represented by the Summit County Sheriff, could approximately enforce such a custody order without violating the Fourteenth Amendment. *Id.* at 1336–38 (Seymour, J., concurring). Carlos Smith's complaint is not that his ex-wife impermissibly was given custody, but rather that she and state officials interfered with his custodial rights, without notice or hearing. The interest in maintaining a parent-child relationship has been found protected under the First and Fourteenth Amendments, see *Trujillo*, 768 F.2d 1186, 1188–89 (10th Cir.1985); *Wise*, 666 F.2d at 1336–38 (Seymour, J., concurring); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), and has been characterized as the right of familial association. *Trujillo*, 768 F.2d at 1188. Beyond doubt, the right of a parent to procedural due process in the regulation of his custodial relationship with his child is a colorable claim under § 1983.

2. *"Mere Negligence"—Failure to State a Claim*

■ Defendants' second line of argument is that the undisputed facts demonstrate that defendants at most were merely negligent in failing to determine the existence and validity of any temporary custody order granting plaintiff custody, and that defendants otherwise merely kept the peace at the scene and did not actually participate in the removal of Shannon Smith. Given these facts, which defendants contend are undisputed, defendants urge that plaintiffs' § 1983 claim must fail since, according to recent Supreme Court and Tenth Circuit precedents, no § 1983 claim may be based on mere negligence.

As defendants note, in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed. 2d 677 (1986), the Supreme Court stated that "the Due Process Clause [of the Fourteenth Amendment] is simply not implicated by a *negligent* act of an official causing *unintended* loss or injury to life, liberty or property." *Daniels*, 106 S.Ct. at 663 (emphasis added) However, *Daniels* and *Davidson* reaffirm the holding of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) that any state of mind required to state a claim under § 1983 derives from the constitutional provision in issue, and not from § 1983 itself.[1] Similarly, in *Specht v. Jensen*, 832 F.2d 1516, 1521 (10th Cir.1987), the Tenth Circuit stated that "in any given section 1983 action, the court must determine the state of mind, if any, necessary to violate the constitutional provision at issue." *See also Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1189 (10th Cir.1985); *McKay v. Hammock*, 730 F.2d 1367, 1373 (10th Cir. 1984) (en banc). *Specht* is consistent with *Daniels* and *Davidson*. Thus in this case the court must determine what constitutional provision is in issue, and the state of mind, if any, necessary to violate that provision.

---

1. In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the United States Supreme Court held that § 1983 does not independently contain any state of mind requirement. *Id.* at 534–35, 101 S.Ct. at 1912. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986) specifically reaffirms this holding. However, *Daniels* and its companion case *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) do partially overrule

*Parratt* in holding that negligent acts which cause *unintended* violations of the fourteenth amendment do not amount to a constitutional violation. *Daniels*, 106 S.Ct. at 663. This holding is specifically limited to procedural due process requirements. *Id. Daniels* and *Davidson* specifically left open "the possibility that there are other constitutional provisions that would be violated by mere lack of care." *Id.* at 666.

In this case defendants' arguments regarding negligence must be rejected for three reasons. First, plaintiff has alleged the proper mental state requisite for an action of this kind. In this case plaintiff alleges that his right of familial association [2] was interfered with, without due process. The Tenth Circuit has concluded that a § 1983 claim may be stated in such cases only where the plaintiff alleges "an intent [on the part of the state actors] to interfere with [the] particular relationship protected by the freedom of intimate association." *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1190 (10th Cir.1985). This requirement is consistent with the mandate of *Daniels* and *Davidson*, and plaintiff has clearly met it: plaintiff alleges that defendants' actions were taken specifically to harm plaintiff and to deprive plaintiff of his civil rights, that is, to interfere with his relationship with his child.

■ The second reason defendants' argument must be rejected is that defendant's reading of *Daniels* and *Davidson* would bring these cases into direct conflict with the Supreme Court's cases dealing with qualified immunity. Defendants would have the court read *Daniels* to exclude any claim where the state actor was merely negligent in any aspect of his conduct without regard to whether he acted intentionally in depriving plaintiff of a civil right. The Supreme Court cases dealing with qualified immunity, as distinguished from the initial determination of constitutional violation, plainly hold that state officials must be objectively reasonable in determining whether their actions comport with clearly established law. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants read *Daniels* and

*Davidson* into conflict with these immunity cases. The court, however, does not read the cases so broadly. *Daniels* and *Davidson* do not bar actions where state actors fail to exercise due care in ascertaining the lawfulness of their conduct and then intentionally deprive another of a constitutional right based upon the negligently formulated belief that such action was justified.[3]

In this case, defendants contend that they did not know that plaintiff had been granted custody of Shannon Smith, and that at most they failed to exercise due care in determining the existence and validity of any temporary custody order. Since the officers were "merely negligent" in this regard, defendants contend that no claim is stated under the requirements of *Daniels* and *Davidson*. However, those cases deal with lack of due care which itself is alleged to infringe some interest protected by the Fourteenth Amendment. In such circumstances, *Daniels* and *Davidson* concluded that a negligent act which causes *unintended* injury does not deprive one of life, liberty or property under the Due Process Clause. *Daniels*, 106 S.Ct. at 665. The allegation in this case, however, is that the defendants intended to deprive plaintiff of custody of his child *after* conducting a negligent *investigation*. An officer's negligence in ascertaining the lawfulness of his conduct is not usually relevant to whether a violation of some constitutional right occurred,[4] but rather to whether the officer, despite the violation, may nevertheless be immune from suit.

Third, defendants' argument also must be rejected because defendants' view of the undisputed facts in this case is not supported in the record currently before the court. Plaintiff has pointed to evidence tending to show that defendants actively were involved in the removal of Shannon

---

**2.** See discussion *supra* n. 1 and cases cited *infra* n. 3.

**3.** For instance, under *Daniels* and *Davidson* a plaintiff could not state a claim under § 1983 based on the Due Process Clause, where a state actor damaged plaintiff's car by driving negligently. However, a plaintiff could state a claim where a state actor, by failing to exercise due care, believed it was permissible to damage

plaintiff's car, and based upon that belief, intentionally did so.

**4.** This is certainly the case as to unintended injuries arising from deprivations of due process rights under the fourteenth amendment, but the impact of negligence as to other constitutional deprivations has been left open. *See supra* n. 1.

Smith. In her deposition, Shannon Marie Smith indicated that the officers supervised the removal, that the officers made telephone calls after she told them Carlos Smith had been awarded temporary custody, and that the officers approved and assisted in the removal. Shannon Marie further indicated that the mere presence of the officers intimidated her and lent validity to Peggy Smith's claim for Shannon. Viewing this evidence in the light most favorable to the nonmoving party, as the court is required to do on a motion for summary judgment, where alleged factual disputes are revealed by contrary sworn testimony, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Wise*, 666 F.2d at 1334, it is manifest that defendants' claim that they were merely negligent and that they were not actively involved in the removal is disputed.

### 3. *Sheriff Eley—"Affirmative Link"*

Defendants next contend that summary judgment in favor of Sheriff Eley is appropriate because he was not present at the scene, and the plaintiffs cannot establish any "affirmative link," between Eley's conduct and the plaintiff's claimed deprivation. The law of the Tenth Circuit in this regard is clear. A supervisor may be liable under § 1983 for "causing" a deprivation of a constitutional right. To be so liable, however, there must be an affirmative link between the conduct of the supervisor and the deprivation alleged. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *McClelland v. Facteau*, 610 F.2d 693, 695–96 (10th Cir.1979). This requirement may be met in a number of ways, for instance, by evidence that the supervisor directly participated in the deprivation, *McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir.1984), or by evidence that the supervisor was grossly negligent in training and supervising employees, *Rock v. McCoy*, 763 F.2d 394, 397 (10th Cir.1985). *See generally Schaefer v. Wilcock*, 676 F.Supp. 1092, 1104–1106 (D.Utah

1987).[5] In this case plaintiffs have alleged that this affirmative link is met in two ways: First, plaintiff alleges that in response to the deputies' telephone call, Eley actually directed that the officers assist Peggy Smith in obtaining custody of Shannon. Second, plaintiffs allege Eley failed properly to train and supervise the officers.

As noted above, on a motion for summary judgment the court views the facts in the light most favorable to the nonmoving party. From this perspective it is clear that material issues of fact exist with respect to Eley's conduct under the first theory. Plaintiff has presented evidence tending to show that Eley directed the officers to assist in the removal of Shannon Smith. Deposition of Shannon Marie Smith, at 16–17. Plaintiff's position under the second theory is more difficult. In *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) the Supreme Court held that a supervisor could not be held liable for inadequate training of police officers based exclusively on one incident of police misconduct. *Id.* at 821, 831, 105 S.Ct. at 2435, 2440. That is apparently just what plaintiff attempts to do here. In his Memorandum in Opposition, plaintiff cites no facts supporting his claim of inadequate training, independent of the alleged misconduct of Offret and Yates on this occasion. Since adequate time for discovery has passed, and since independent evidence of inadequate training is an essential element of this theory of proof, summary judgment holding the second theory inadequate as a matter of law is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### 4. *Qualified Immunity*

Finally, defendants claim summary judgment should be granted in this case because the defendant sheriffs are entitled to qualified immunity as a matter of law under *Harlow v. Fitzgerald*, 457 U.S. 800,

---

**5.** In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court found that the causa-tion requirement of § 1983 could also be met by showing a constitutional deprivation was effect-ed in furtherance of a governmental policy.

102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court held that the affirmative defense of qualified immunity is available to law enforcement officers in a proper case. The defense of qualified immunity extends only to prevent suits for damages and does not prevent injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 536–43, 104 S.Ct. 1970, 1977–81, 80 L.Ed.2d 565 (1984); *Supreme Court v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Thus, the defense, if granted as a matter of law, would not completely dispose of this case, since an injunction[6] and declaratory judgment are also requested.

In *Schaefer v. Wilcock*, 676 F.Supp. 1092, 1107 (D.Utah 1987) this court noted that,

[a]nalysis of the availability of immunity under *Harlow* and *Creighton* involves two steps: (1) the court must determine whether the right allegedly violated was "clearly established at the time [the] action occurred." *Harlow*, 457 U.S. at 818 [102 S.Ct. at 2738]; and (2) the court must make a more particularized determination that "the contours of the right [were] sufficiently clear that a reasonable official would understand [his conduct in a particular case] violates that right." *Creighton*, 107 S.Ct. at 3039.

In this case, plaintiff asserts that the actions of Eley, Offret and Yates violated his clearly established liberty interest in maintaining a parent-child relationship and his right to procedural due process. In

support of this assertion plaintiff cites *Wise v. Bravo*, 666 F.2d 1328, 1331–32 (10th Cir.1981) and a long line of Supreme Court cases[7] recognizing that the relationship between parent and child is constitutionally protected. It is beyond doubt that "the relationship between a parent and child is constitutionally protected." *Wise*, 666 F.2d at 1331. It is further clear that, at a minimum, such protected relationship may not be interfered with, without due process.

Having concluded that the rights plaintiff asserts are and were clearly established at the time the incidents in question occurred, the court must now determine whether the contours of the rights were sufficiently clear that the defendants reasonably should have known that their conduct was unlawful. The court notes preliminarily that there are material issues of fact regarding the conduct of the deputy sheriffs at the scene. The defendants contend their actions consisted merely of keeping the peace. Plaintiff, on the other hand, contends the sheriffs were actively engaged in changing custody from Carlos to Peggy, even after they learned that Carlos had custody of Shannon under claim of right. As the court has noted, on a motion for summary judgment, such disputes must be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Assuming the very doubtful proposition that county sheriffs should assist in the enforcement of valid custody orders, absent express direction from the court, this court concludes that a reasonable officer must know he may not assist a parent in obtaining custody *in violation of* a court order. In fact, Utah has made custodial

**6.** There is substantial doubt as to whether injunctive relief would be available in this case. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

**7.** *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), *reh. denied*, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94

S.Ct. 791, 39 L.Ed.2d 52 (1974); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

interference a class A misdemeanor. *See* Utah Code Ann. § 76–5–303 (Supp.1987). Questions of rightful custody between parents are not to be resolved other than by the courts. Thus, in a situation like this where both parties claim custody as of right, a reasonable officer must know that he may not assist in any change of custody absent direction from the court. Here it is alleged that the officers assisted Peggy Smith in obtaining custody of Shannon Smith, and that the officers' assistance continued *after* they were informed that Carlos Smith claimed custody of Shannon as of right. The court's conclusion that under this view of the facts the sheriffs would not be immune from suit is supported by their alleged failure to wait for the return of Carlos Smith before the change of custody was effected.

For the reasons aforesaid, defendants' motion for summary judgment is denied. This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.