Sherry HILL and Gregory Hill, individually and as personal representatives of the estate of Preston Alexander Hill, Plaintiffs,

v.

Joseph MARTINEZ, individually and as a police officer of the City of Aurora, the City of Aurora, Defendants.

Civil Action No. 97–B–786.

United States District Court, D. Colorado.

Feb. 11, 2000.

C. Lamont Smith, Smith & Schaffer, P.C., Denver, CO, for plaintiffs.

Marc F. Colin, Richard A. Stubbs, Bruno, Bruno & Colin, P.C., Denver, CO, Charles H. Richardson, Julia A. Bannon, Office of the City Attorney, Aurora, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants move for summary judgment, and for reconsideration of my November 12, 1999 order granting Plaintiffs' motion to supplement their response to Defendants' summary judgment motion with an affidavit. Alternatively, Defendants move for permission to file a supplemental reply in support of their motion for summary judgment so that they can reply to the new affidavit. Plaintiffs oppose the former motion. The issues are adequately briefed and oral argument would not materially aid their resolution. For the reasons stated below, I grant in part and deny in part Defendants' summary judgment motion, and deny as moot Defendants' motion for reconsideration, or, in the alternative, for permission to file a supplemental reply. Jurisdiction exists pursuant to 28 U.S.C. § 1331.

### I.

Plaintiffs filed suit on April 17, 1997. The action arises from the death of the Hills' son, Preston Alexander Hill (Preston Hill). Defendant Martinez shot and killed Preston Hill on October 23, 1995 during an arrest incident to a narcotics investigation. The original complaint named only Sherry Hill and Gregory Hill as plaintiffs.

On June 2, 1997, Defendants moved to dismiss Plaintiffs' original complaint pursuant to Rule 12(b)(6), arguing, *inter alia,* that Plaintiffs lacked standing to assert certain claims. On October 22, 1997, while Defendants' motion to dismiss was pending, Plaintiffs filed an *Amended Com-plaint.* The *Amended Complaint* added the "Estate of Preston Alexander Hill" as a named plaintiff, and alleged seven claims for relief on behalf of the Hills and the Estate of Preston Hill. In light of the *Amended Complaint,* Defendants renewed their motion to dismiss pursuant to Rule 12(b)(6) on November 24, 1997.

On June 29, 1998, I issued an order granting Defendants' motion to dismiss in part and dismissing three claims in the *Amended Complaint.* I also dismissed two defendants, Verne St. Vincent and Nancy Freed, and directed the amendment of the caption to reflect that Plaintiffs are proceeding "individually and as personal representatives of the Estate of Preston Alexander Hill." *Order* at 18. The claims remaining after my order are: (1) deprivation of the fundamental right of familial association embodied in the First and Fourteenth Amendments of the United States Constitution, actionable pursuant to 42 U.S.C. § 1983 (1997), brought by Plaintiffs in their individual capacities against Officer Martinez and the City of Aurora (the City); (2) an excessive force claim in violation of the Fourth Amendment of the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, brought by Plaintiffs in their capacities as personal representatives of the estate of their son against Officer Martinez; (3) deprivation of various rights secured by the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, brought by Plaintiffs in their capacities as personal representatives of the estate of their son against the City. In addition, I indicated that the seventh claim for exemplary damages is not a claim, but part of the prayer for relief.

On December 9, 1998, the remaining defendants moved for summary judgment on the remaining claims. On November 10, 1999, Plaintiffs moved to supplement their response to Defendants' motion for summary judgment with an affidavit. On November 12, 1999, I granted that motion. On December 9, 1999, Defendants moved for reconsideration of my November 12,

1999 order, or, in the alternative, for permission to file a supplemental reply in support of their motion for summary judgment in order to respond to the new affidavit.

## II.

Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c). The very purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that demonstrate the absence of genuine issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the non-moving party has the burden of showing that issues of undetermined material fact exist. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. In so doing, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980); Rule 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Unsupported allegations "without any significant probative evidence tending to support the complaint" are insufficient, *White*, 45 F.3d at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is inappropriate if genuine issues of material fact exist. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997).

In ruling on summary judgment, I must view the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See id.* If no reasonable juror could find for the nonmoving party based on the evidence present in the motion and response, then summary judgment is proper and a trial is unnecessary. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment should not enter if a reasonable trier of fact could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494.

## III.

### A.

#### 1.

Defendant Martinez first argues that Plaintiffs' familial association claim brought pursuant to 42 U.S.C. § 1983 must be dismissed. Specifically, Defendant Martinez asserts that no evidence exists that in killing Preston Alexander Hill, he directed his action at either individual Plaintiff, or otherwise intended to interfere with their relationship with their son. I agree.

██ Plaintiffs' right of familial association is included in the substantive due process right of freedom of intimate association, which is consonant with the right of privacy. *See J.B. v. Washington County*, 127 F.3d 919, 927 (10th Cir.1997) (quoting *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir.1993)). The right is based on the liberty interest inherent in the Fourteenth Amendment. *See id.* Nevertheless, " '[n]ot every statement or act that results in an interference with the rights of intimate association is actionable.' " *Id.*

(quoting *Griffin,* 983 F.2d at 1548). On the contrary, a familial association claim results only if the state actor "inten[ded] to interfere with [the] relationship." *Trujillo v. Board and County Commissioners of the County of Santa Fe,* 768 F.2d 1186, 1190 (10th Cir.1985). Such intent is shown by establishing that the defendant or defendants "directed" their challenged conduct or statement "at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship." *J.B.,* 127 F.3d at 927 (quoting *Griffin,* 983 F.2d at 1548).

Here, the individual Plaintiffs have made no such showing. Indeed, both individual Plaintiffs admitted in their depositions that (1) they have no reason to believe that Defendant Martinez's actions were directed at them, (2) prior to the death of their son they had minimal contacts with the Aurora Police Department and none with Defendant Martinez, (3) they are not aware that their deceased son ever encountered or otherwise knew Defendant Martinez prior to the chain of events that led to his death, and (4) they are not aware that Defendant Martinez knew of them or either of their sons prior to the date of their son's death. *See Defendants' Summary Judgment Brief* at Ex. J (67–69, 83–85, 111–12); Ex. K (42–43). In addition, in their interrogatory responses, Plaintiffs claim that Defendant Martinez's conduct was in "reckless disregard" of their rights to familial association. *Id.* At Ex. G. (answers to interrogatories eight through ten); Ex. H (answers to interrogatories eight through ten). As indicated above, however, a Fourteenth Amendment claim based on familial association must be based on specific intent to interfere with that association. *See Trujillo,* 768 F.2d at 1190. The allegations noted above do not establish that Defendant Martinez acted with the requisite intent.

Plaintiffs respond in effect that *Trujillo's* intent requirement in section 1983–based familial association claims has been undermined by subsequent Tenth Circuit authority. Although the Tenth Circuit la-

ter determined that some section 1983 claims require a showing of reckless behavior by state actors, *Trujillo's* requirement of a showing of intent in familial association claims has not been overturned. *See Williams v. City and County of Denver,* 99 F.3d 1009, 1021 (10th Cir. 1996) (in a case raising the same argument, stating that "[e]ven if we were to agree that intervening case law has raised some question about the propriety of our ruling in *Trujillo,* a three-judge panel is not at liberty to overrule circuit precedent established by prior opinions.... 'The proper avenue for raising these issues lies in a petition for en banc review.' ") (citations omitted) *vacated by* 140 F.3d 855 (1997). The case relied upon by Plaintiffs as implicitly overturning *Trujillo* and establishing that reckless behavior by a state actor is sufficient to support a familial association claim neither included such a claim nor addressed *Trujillo. See Medina v. City and County of Denver,* 960 F.2d 1493 (10th Cir.1992) (section 1983 claims brought by an injured bystander to a high speed police chase).

In addition, after the *Williams* decision, and as noted above, the Tenth Circuit held in *J.B.* that plaintiffs must show that a state actor "directed" his or her challenged conduct or statement "at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship." *J.B.,* 127 F.3d at 927 (quoting *Griffin,* 983 F.2d at 1548). Although not explicit, I read *J.B.* to maintain *Trujillo's* intent requirement. *Id.*

For the foregoing reasons, and viewing the evidence in the light most favorable to Plaintiffs, no reasonable juror could find on this record that Defendant Martinez "inten[ded] to interfere with [Plaintiffs' familial] relationship," *Trujillo,* 768 F.2d at 1190, or otherwise "directed" his alleged action in shooting Plaintiffs' son "at the intimate relationship [between Plaintiffs and their son] with knowledge that the ... conduct w[ould] adversely affect that relationship." *J.B.,* 127 F.3d at 927 (quoting

*Griffin*, 983 F.2d at 1548). Accordingly, summary judgment is appropriate on Plaintiffs' first claim.

2.

■] Defendant City of Aurora also moves for summary judgment on Plaintiffs' familial association claim. The Tenth Circuit has held that "a municipality cannot be held liable under section 1983 for the acts of an employee if [it is not possible to] find[ ] that the municipal employee committed [a] constitutional violation." *Myers v. Oklahoma County Board of County Commissioners*, 151 F.3d 1313, 1316 (10th Cir.1998). Because I have granted summary judgment on the familial association claim against Defendant Martinez, no reasonable juror could find the City liable for violation of Plaintiffs' right to familial association. Consequently, summary judgment for Defendants is appropriate on Plaintiffs' first claim.

B.

1.

Defendants next contend that survivors of a decedent can only sue to recover for injuries incurred by the decedent before his or her death when appointed personal representatives of the decedent's estate. Although Plaintiffs filed their *Amended Complaint* on October 22, 1997, one day before the expiration of the statute of limitations for section 1983–based claims in which they at least implied they had been so appointed, Defendants assert they were not actually appointed until November 10, 1998. Consequently, Defendants argue, because Plaintiffs did not have the requisite authority to file the *Amended Complaint* within the statute of limitations, and because the statute of limitations has now run, the remaining claims are not viable.

Defendants further argue that Plaintiffs' appointment on November 10, 1998, contravened C.R.S. § 15–12–108(1)'s three year statute of limitations for such appointments. *See* C.R.S. § 15–12–108(1) ("No informal probate or appointment proceeding or formal testacy or appointment proceeding, other than a proceeding to

probate a will previously probated at the testator's domicile and appointment proceedings relating to an estate in which there has been a prior appointment, may be commenced more than three years after the decedent's death"). Because Plaintiffs violated C.R.S. § 15–12–108(1), Defendants argue they cannot take advantage of C.R.S. § 15–12–701's relation back provision and thereby retroactively render valid their filing of the *Amended Complaint* within the statute of limitations. *See* C.R.S. § 15–12–701 ("The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter"). Alternatively, Defendants suggest Plaintiffs' filing of the *Amended Complaint* exceeded their authority as pre-appointment personal representatives under Section 15–12–701. *See* C.R.S. § 15–12–701 ("Prior to appointment, a person named executor in a will may carry out written instructions of the decedent relating to his body, funeral, and burial arrangements."). Defendants thus conclude that the second and third claims must be dismissed.

Plaintiffs respond that their appointment on November 10, 1998 is valid under C.R.S. § 15–12–108(2) which states that the limitations in C.R.S. § 15–12–108(1) do not apply to "[a]ppointment proceedings and testacy proceedings if no previous testacy proceedings or proceedings determining heirship relating to the decedent's estate have been concluded in this state." Because "no previous testacy proceedings or proceedings determining heirship relating to the decedent's estate ha[d] been concluded" prior to their appointment, C.R.S. § 15–12–108(2), Plaintiffs conclude they can take advantage of C.R.S. § 15–12–701's relation back provision, and that under that provision, their *Amended Complaint* satisfies the statute of limitations.

As an initial matter, I note that the relation back provision of Fed.R.Civ.P. 15(c) does not apply here, as both parties

suggest, because Plaintiffs have not offered to further amend their complaint to incorporate their status as *duly* appointed representatives of the estate of their son. Instead, the Plaintiffs want their appointment to relate back to their *Amended Complaint,* thereby retroactively providing them with the legal capacity they needed to validly file that document. Consequently, Plaintiffs' seemingly deficient *Amended Complaint* would not be saved by Rule 15(c).

■ 42 U.S.C. § 1988(a) provides that the federal courts' jurisdiction to decide a section 1983 suit will be governed by applicable state law when there is no controlling federal law on a particular point. See 42 U.S.C. § 1988(a). In *Robertson v. Wegmann,* 436 U.S. 584, 588–90, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), the Supreme Court held that state law controls the survival and abatement of section 1983 suits so long as it is "not inconsistent with the Constitution and laws of the United States." See 42 U.S.C. § 1988(a). *See also Grandbouche v. Clancy,* 825 F.2d 1463, 1465 (10th Cir.1987) (holding that question of survivorship is determined by looking to Colorado law). Under Colorado law, claims other than slander or libel survive the death of the claimant, C.R.S. § 13–20–101, and can be pursued in court by the "personal representative of the deceased." C.R.S. § 13–20–101.

To become the personal representative of the estate of a decedent, "a person must be appointed by order of the court or registrar, qualify, and be issued letters." C.R.S. § 15–12–103. There is no limit on the time in which an appointment can take place "if no previous testacy proceedings or proceedings determining heirship relating to the decedent's estate have been concluded in this state." C.R.S. § 15–12–108(2)(c). In addition, "the powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter." C.R.S. § 15–12–701.

Plaintiffs filed an *Amended Complaint* on October 22, 1997 in which they suggested they had been appointed representatives of their son's estate. However, Plaintiffs were not appointed personal representatives of their son's estate until November 10, 1998. Before then, Plaintiffs allege there were no "testacy proceedings or proceedings determining heirship relating to the decedent's estate." *Plaintiffs' Response* at 5. Defendants have provided no evidence to the contrary. Consequently, under Colorado law, Plaintiffs' "powers [as] personal representatives relate back in time to give [proper legal effect to] acts by the person appointed which are beneficial to the estate occurring prior to appointment," C.R.S. § 15–12–701, thereby rescuing their seemingly improper filing of the *Amended Complaint* on October 22, 1997 within the statute of limitations.

■ This does not end the analysis, however, because whether this outcome is permissible turns on whether the ability to sue as the representative of a decedent's estate is a question of standing or capacity to sue under Rule 17(b). If it is the former, this action must be dismissed. Indeed, standing is a jurisdictional requirement, *see Keyes v. School Dist. No. 1,* 119 F.3d 1437, 1445 (10th Cir.1997) ("Standing is a threshold, jurisdictional issue"), and jurisdiction is generally determined at the time a complaint is filed. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Because events occurring after the filing of a complaint cannot retroactively create jurisdiction, *see Lujan v. Defenders of Wildlife,* 504 U.S. 555, 571 n. 4, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), Plaintiffs' appointment as representatives on November 10, 1998 could not retroactively confer standing on them. Allowing otherwise would work an impermissible retroactive creation of jurisdiction within the statute of limitations. Under such circumstances, I could not apply C.R.S. § 15–12–701 because in the context of this case such application would be "inconsistent

with the Constitution and laws of the United States." 42 U.S.C. § 1988(a). Dismissal would necessarily follow.

If the ability to sue as the representative of a decedent's estate is a question of capacity to sue under Rule 17(b), on the other hand, Plaintiffs' November 10, 1998 filing would rescue their otherwise deficient *Amended Complaint.* Under Rule 17(b), "capacity to sue or be sued [is] determined by the law of the state in which the district court is held." Because capacity to sue is not jurisdictional, *see Federal Practice and Procedure,* § 1559, at 442–43, application of C.R.S. § 15–12–701 would permit Plaintiffs November 10, 1998 appointment to retroactively validate their October 22, 1997 exercise of representative authority in filing the *Amended Complaint* within the statute of limitations. Consequently, characterization of the ability to sue as the representative of a decedent's estate as a question of standing or of capacity to sue is determinative.

■ I hold that whether individuals can sue on behalf of an Estate is best characterized as a question of capacity. The Tenth Circuit has stated that the "difference between capacity to sue and standing to sue [is that] [t]he former relates to the right to come into court, while the latter relates to the right to relief." *Citizens Concerned for Separation of Church and State v. The City and County of Denver,* 628 F.2d 1289, 1300 (10th Cir.1980). Similarly, Wright, Miller and Kane view capacity as "a party's personal right to litigate in a federal court." 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1542 at 327 (1990). Likewise, the Supreme Court has tied standing, and thus the right to relief, to the determination whether the plaintiff can show an injury in fact traceable to the conduct of the defendant. *See Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Whether plaintiffs can sue on behalf of an estate is a question of "right to litigate in a federal court," not a question of "right to relief" based on whether an injury-in-

fact exists. The premise of survivorship statutes is that the estate retains any injury suffered by the decedent prior to his or her death and, thus, the right to relief for that injury. That is why the personal representative of the estate, and no one else, can sue to recover damages for injuries incurred by the decedent. *See* C.R.S. § 13–20–101. Moreover, the judicial determination of who should represent the estate turns not on who has suffered an injury from actions taken against the decedent, but rather on who can best carry out the duties, fiduciary and otherwise, imposed by the appointment. *See* C.R.S. § 15–12–703(1). Consequently, whether plaintiffs can sue on behalf of an estate is a question of capacity.

My conclusion is supported by the only cases of which I am aware that have addressed the capacity to sue/standing distinction in the same context. *See Firestone v. Galbreath,* 976 F.2d 279, 282 (6th Cir.1992) ("The question ... whether these plaintiffs can sue on behalf of the Estate.... would seem to be a question of capacity rather than standing."); *Glickstein v. Sun Bank/Miami N.A.,* 922 F.2d 666, 670 (11th Cir.1991) ("The question in this case is whether Howard Glickstein is able to bring this case on behalf of the estate. This is not a question of standing; rather, this issue involves the question of whether Glickstein has the capacity to bring this action on behalf of the estate."); *Edens v. Laubach,* 838 F.Supp. 510, 513–14 (D.Kan.1993) (question of who can bring estate's causes of action is better characterized as one of capacity to sue, and not standing). Numerous cases do address the question whether an individual can sue on behalf of an estate only within the context of standing. *See, e.g., Moreland v. Las Vegas Metropolitan Police Department,* 159 F.3d 365, 369–70 (9th Cir.1998) (finding that District Court did not err in dismissing case on the basis that Plaintiffs lacked standing to bring claims on behalf of decedent's estate because Plaintiffs did not present evidence of their appointment as representatives of the estate); *Barrett*

*v. U.S.*, 689 F.2d 324, 331 (2d Cir.), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) (representative of estate has standing to assert § 1983 claim where state law provides right of survival); *Reighley v. International Playtex, Inc.*, 604 F.Supp. 1078, 1080 (D.Colo.1985) (personal representative of estate has standing to assert the claims of the estate). These cases are marked by imprecision for their failure to distinguish standing from capacity to sue. Because "courts and attorneys frequently have confused the requirements for standing with those used in connection with ... capacity principles," 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 1542, at 330, such cases lack persuasive value on the question raised here. Hence, I conclude that the question whether Plaintiffs can sue on behalf of their son's estate is one of capacity, and that under Rule 17(b) and C.R.S. §§ 15–12–103; 15–12–108(2)(c), Plaintiffs have the capacity to sue on the behalf of the estate of their late son.

I also conclude that under C.R.S. § 15–12–701, Plaintiffs November 10, 1998 appointment retroactively renders valid their October 22, 1997 filing of the *Amended Complaint* within the statute of limitations. Defendants' apparent reliance on *In re Estate of Rienks*, 844 P.2d 1295, 1298 (Colo.App.1992) for the proposition that Plaintiffs' had no authority to file the *Amended Complaint* because their powers to represent the estate prior to appointment were limited to those specifically identified in the third sentence of C.R.S. § 15–12–701 is misplaced. *See* C.R.S. § 15–12–701 ("Prior to appointment, a person named executor in a will may carry out written instructions of the decedent relating to his body, funeral, and burial arrangements"). In *Rienks*, the Colorado Court of Appeals held that "in the absence of appointment, the duties and powers of a 'designee' for the office of personal representative extend no further than the limited ministerial tasks set forth [in C.R.S. § 15–12–701]." *Rienks*, 844 P.2d at 1298. By "designee," the Colorado Court of Appeals meant "one who is designated or

nominated personal representative in [a] will." *Id.*

Here, there is no contention that Plaintiffs were "designated or nominated personal representative in [their son's] will." *Id.* Moreover, to apply the *Rienks* holding with respect to "designated or nominated personal representatives" to Plaintiffs would effectively eliminate Section 15–12–701's relation back provision because there would then be no class of individuals to which it would apply. Consequently, giving effect to the legislative purpose underlying Section 15–12–701's plain language as I am required to do, *see Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo. 1991), I conclude that Section 15–12–701 requires Plaintiffs' appointment as personal representatives of their son's estate to relate back to, and thereby render valid, their filing of the *Amended Complaint*. Consequently, summary judgment on the second and third claims on the basis that Plaintiffs failed to be appointed personal representatives of their son's estate within the statute of limitations is inappropriate.

2.

Defendants next argue that Plaintiffs' second and third claims should be dismissed because Plaintiffs made misrepresentations to this court. Specifically, Defendants contend that Plaintiffs misrepresented their status as duly appointed personal representatives of their son's estate. Defendants state that their "motion ... seeks to rectify" the alleged misrepresentation, which I construe as a prayer for dismissal. Because Defendants have not presented a proper Rule 11 motion for sanctions, I will not consider this argument.

3.

Defendants also suggest I exercise some sort of appellate function with respect to the Colorado State Probate Court's appointment of Plaintiffs as representatives of their son's estate. Specifically, Defendants assert Plaintiffs "misled the probate court" by not indicating that their applica-

tion for appointment was tendered more than three years after the death of their son, and intimate that I should review the Probate Court's decision in light of the correct information. Because Defendants have not cited any relevant legal authority providing me with the power to do so, I will not consider this argument.

### C.

### 1.

Defendant Martinez next moves for summary judgment on Plaintiffs' second claim. Specifically, he argues Preston Hill was killed by the accidental discharge of his firearm, and that such an accident does not rise to the level of a Constitutional violation, either because it does not constitute a seizure, or because Defendant Martinez's actions were merely negligent. Defendant Martinez concludes he is entitled to summary judgment.

Plaintiffs respond that there is evidence that Defendant Martinez "willfully and volitionally shot Preston Hill." *Plaintiff Response* at 28. As support, Plaintiffs cite: (1) an affidavit from Paul M. Paradis, a "Federally Licensed Firearms Dealer," and a certified "Glock Armourer" and "Law/Security Enforcement Instructor" that "the firing of the gun was an affirmative act by Defendant Martinez" because (a) testing of the gun indicated that it functioned properly, and (b) contrary to Officer's Martinez's contention, his firearm could not have accidentally discharged after its barrel hit Preston Hill's back causing it to be forced upwards to an almost vertical angle because such an impact would have resulted in an "increase in the distance between his finger and the trigger," *Plaintiffs' Response* Ex. 3, at 2; (2) inconsistencies between Defendant Martinez's initial version of the events and a report of a police officer who investigated the shooting; (3) an affidavit by Wilbur Richie, "a recognized expert in the areas of Forensic Odontology, Coroner and Pattern Injuries" that "it would be impossible for the gun to have caused the pattern injury that is manifested in this case from the

gun hitting Preston Hill's back," and "[i]t is likely that Preston Hill was shot in a prone position with the Defendant Martinez's gun very close to Mr. Hill's body;" *Plaintiffs' Response*, Ex. 10, at 2; and (4) an affidavit by Calvin Stevenson, an alleged witness to the shooting, that Defendant Martinez "while running toward Preston Hill, stopped and shot Preston Hill from behind." Plaintiffs also claim that Defendant Martinez seized Preston Hill from the moment he drew his firearm, and that such action was unreasonable.

The Fourth Amendment protects individuals against "unreasonable searches and seizures." *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (excessive force claims are analyzed under the Fourth Amendment). To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a "seizure" occurred, and that the seizure was "unreasonable." *Brower v. County of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). In *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court held that a "seizure" occurs only when a fleeing person is "physically touched" by police or when he or she submits to a show of authority by police. *Id.* at 626–27, 111 S.Ct. 1547. In adopting this rule, the Court expressly stated that an assertion of authority by the police without submission by the fleeing person does not constitute a seizure. *Id.* at 626, 111 S.Ct. 1547; *see also id.* at 626 n. 2, 111 S.Ct. 1547 (noting that "neither usage nor common-law tradition makes an attempted seizure a seizure"); *id.* at 628, 111 S.Ct. 1547 (stating that a seizure does not occur during the course of a police pursuit of a fleeing vehicle if the pursuit, as a show of authority, does not produce a stop) (citing *Brower*, 489 U.S. at 597, 109 S.Ct. 1378).

In determining whether a seizure is unreasonable, I must use a totality of the circumstances approach. *See Sevier v. City of Lawrence, Kansas*, 60 F.3d 695,

699 (10th Cir.1995). Under such an approach, "events immediately connected with the actual seizure are taken into account in determining whether the seizure is reasonable." *Id.* at 699 (quoting *Bella v. Chamberlain,* 24 F.3d 1251, 1256 n. 7 (10th Cir.1994)). "Of course, if the preceding events are merely negligent or if they are attenuated by time or intervening events, then they are not to be considered in an excessive force case." *Sevier,* 60 F.3d at 699 n. 8. *See id.* at 699 n. 7 ("Mere negligent actions ... would not, of course, be actionable under § 1983") (quoting *Daniels v. Williams,* 474 U.S. 327, 331–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("injuries inflicted by governmental negligence are not addressed by the United States Constitution")). "The reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Id.* at 699. The reasonableness inquiry must be undertaken from " 'the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' " *Hinton v. City of Elwood, Kansas,* 997 F.2d 774, 780 (10th Cir.1993) (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Given this law, Defendant Martinez's motion and Plaintiffs' response raise two primary questions: (1) did Defendant Martinez seize Preston Hill, and if so, when; and (2) if there was a seizure, was it reasonable? Summary judgment on Plaintiffs' second claim will result from lack of a genuine issue of material fact with respect to either question. I address the questions in turn.

a.

] A reasonable juror could conclude that Preston Hill was seized when Defendant Martinez "grabbed Preston Hill's left shoulder with his left hand." *Defendants' Motion for Summary Judgment* at 2. The Tenth Circuit has held that "a seizure occurs ... when a fleeing person is *physically touched* by police or when he or she submits to a show of authority." *Bella,* 24 F.3d at 1255 (emphasis added) (interpreting *Hodari D.*) Genuine issues of material fact thus remain regarding when Defendant Martinez seized Preston Hill for Fourth Amendment purposes. Consequently, summary judgment on Plaintiffs' second claim on the basis that Defendant Martinez never seized Preston Hill is inappropriate.

b.

 The question whether Defendant Martinez's actions were unreasonable for Fourth Amendment purposes turns on whether he acted recklessly at any point during the seizure. *See Sevier,* 60 F.3d at 699 n. 7 ("Mere negligent actions ... would not, of course, be actionable under § 1983"). In the Tenth Circuit, "[a]n act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk, for example 'when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death' or grievous bodily injury." *Medina v. City and County of Denver,* 960 F.2d 1493, 1496 (10th Cir.1992) (quoting *Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir.1988) (en banc), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989)); accord *Apodaca v. Rio Arriba County Sheriff's Dep't,* 905 F.2d 1445, 1446–47 n. 3 (10th Cir.1990) (reckless conduct must involve true indifference to risks created). *See also Webber v. Mefford,* 43 F.3d 1340, 1343 (10th Cir.1994) (relying on *Medina*'s definition of reckless in a Constitutional tort case). Police officers do not act recklessly in drawing their weapons if they "reasonably believe they are necessary for their protection." *United States v. Merritt,* 695 F.2d 1263, 1273 (10th Cir.1982), cert. denied, 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983). *See United States v. Merkley,* 988 F.2d 1062, 1064 (10th Cir. 1993) ("[a] law enforcement agent, faced with the possibility of danger, has a right

to take reasonable steps to protect himself" (citations omitted)).

The arguments presented by Defendant Martinez and Plaintiffs raise three questions regarding the reasonableness of Defendant Martinez's actions: (1) was Defendant Martinez's act of drawing his weapon an "event[ ] immediately connected with the actual seizure" that can be "taken into account in determining whether the seizure is reasonable", *Bella*, 24 F.3d at 1256 n. 7; (2) if so, was it reasonable for Defendant Martinez to draw his weapon in effecting the arrest of Preston Hill; and (3) was the rest of the seizure reasonable? I again address each in turn.

i.

 I conclude that under the totality of the circumstances a genuine issue of material fact exists regarding whether Defendant Martinez's act of drawing his firearm is an "event[ ] immediately connected with the actual seizure" that can be "taken into account in determining whether the seizure is reasonable." *Bella*, 24 F.3d at 1256 n. 7. Although not entirely clear, it appears that immediately after he drew his weapon and instructed Preston Hill to halt, Defendant Martinez "ran ... 8 to 10 feet before [he] was able to touch Preston Hill's shoulder." *Defendants' Motion for Summary Judgment*, Ex. 1, at 9. Given these facts, I cannot say that no reasonable juror could conclude that Defendant Martinez's decision to draw his weapon was so "attenuated by time or intervening events" that it cannot be considered in the reasonableness inquiry. *Sevier*, 60 F.3d at 699 n. 8. *See Bella*, 24 F.3d at 1256 n. 7. Summary judgment on the question whether Defendant Martinez's decision to draw his weapon can be considered in the reasonableness inquiry is inappropriate.

ii.

 I next address whether summary judgment is appropriate on the question whether Defendant Martinez was reckless in drawing his weapon to effect the arrest of Preston Hill. In his responses to interrogatories, Defendant Martinez stated under the penalty of perjury that

the circumstances involved the stop of a suspected gang member for the sale of [crack cocaine] .... There was a high level of gang activity in the area where the contact took place and known gang involvement in the sale of crack cocaine in this area. In fact, within approximately six months prior to the incident there were 3 gang related shootings, including two homicides, at the same location where this incident took place. Based upon my training, these circumstances alone pose a threat to my safety and to others in the area, and in accordance with my training in effectuating this type of high risk stop and arrest, I drew my service weapon as I approached Preston Alexander Hill.

*Defendants' Motion for Summary Judgment*, Ex. A, at 2. In response, Plaintiffs attached two affidavits from putative experts. *See Plaintiffs' Response*, Exs. 2, 3. Dr. Louis A. Mayo states that Defendant Martinez

acted in total disregard for well established principles of policing.... No adequately trained officer in the position of Officer Martinez would have believed that he had a tactical reason to draw his pistol or to use deadly force on Mr. Hill. There is strong evidence that there was no imminent threat to life or great bodily harm by the actions of Mr. Hill at the scene or reasonably expected after the scene, as stated by Officer Martinez in his response to Discoveries. The drawing of the pistol impaired Officer Martinez's abilities to run to catch Mr. Hill as well as his ability to subdue Mr. Hill. All of these improper actions were proximate causes of the death of Mr. Hill.

*Plaintiffs' Response* Ex. 2 at 2. Dr. Mayo also asserts that Defendant Martinez "violated his training by pointing his pistol with his finger on the trigger at Preston Hill". *Id.* At 31. In addition, Paul Paradis asserts that Defendant Martinez:

violated at a minimum, 2 laws of Colorado, 18–3–206 menacing, and 18–1–707 use of physical force in making an arrest or preventing an escape. By immediately drawing his gun when he had no reason to believe the suspect was likely to use deadly physical force or even had a weapon with him. The number of Police Officers available was more than enough to effect an arrest. By drawing a firearm that was not authorized or needed, he created circumstances that were grossly and potentially criminally reckless and negligent and do not appear to meet the requirements under state law.

Officer Martinez when drawing his firearm had the responsibility of maintaining total control over the firearm and voluntarily limited his ability to use appropriate force over the subject to effect the arrest. This was Officer Martinez's decision to inhibit his own ability to make a proper arrest by attempting to control the suspect and the firearm at the same time. Officer Martinez had 11 years of experience and training in excess of 1000 hours. This would demonstrate his knowledge of the law. He knew when to resort to use deadly force but obviously choose to disregard the law.

*Plaintiffs' Response,* Ex. 3, at 1–2.

The affidavits by Dr. Mayo and Mr. Paradis are sufficient to create a genuine issue of material fact regarding whether Defendant Martinez was reckless in drawing his weapon. Given the claims that Defendant Martinez acted "potentially criminally reckless," *id.* at 2, and with "total disregard for well established principles of policing," *id.* at Ex. 2, at 2, I cannot conclude that no reasonable juror could find that Defendant Martinez's decision to arrest Preston Hill with his gun drawn was unreasonable. Summary judgment is thus inappropriate on that question.

iii.

█] Finally, I address whether summary judgment is appropriate on the question whether the rest of the seizure was

reasonable. I conclude that the affidavits by Dr. Richie and Mr. Paradis create a genuine issue of material fact regarding the reasonableness of Defendant Martinez's actions *after* he "grabbed Preston Hill's left shoulder with his left hand." Mr. Paradis' assertion that "the firing of the gun was an affirmative act by Defendant Martinez," *Plaintiffs' Response,* Ex. 3, at 2, and Dr. Richie's claim that "it would be impossible for the gun to have caused the pattern injury that is manifested in this case from the gun hitting Preston Hill's back," and "[i]t is likely that Preston Hill was shot in a prone position with the Defendant Martinez's gun very close to Mr. Hill's body," *Plaintiffs' Response,* Ex. 10, at 2, differ significantly from Defendant Martinez's version of events. Based on these affidavits, reasonable jurors could find Defendant Martinez's actions unreasonable.

Defendants argue in effect that I should disregard Dr. Richie's affidavit because it is a sham. As support, Defendants cite apparent inconsistencies between Dr. Richie's affidavit, and both a written report he authored on November 7, 1995 (1995 Report), and his deposition testimony. The Tenth Circuit permits an affidavit that conflicts with earlier sworn testimony be disregarded when it constitutes an attempt to create a sham fact issue. *See Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986). In *Franks,* the Tenth Circuit held that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his or her own prior testimony. *Id.* Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *See id.*

I cannot conclude that Dr. Richie's affidavit is a sham created for the purpose of avoiding summary judgment. In his deposition, Dr. Richie stated both that he did not disagree with the findings of the individual who performed the autopsy of Preston Hill, Dr. Deter, *see Defendants' Motion for Summary Judgment*, Ex. E at 78, and that he could not render an opinion regarding exactly how Preston Hill was killed. *Id.* at 62. Because the autopsy report did not draw any conclusion regarding the events that led to Preston Hill's death, *see Plaintiffs' Response*, Ex. 8, Dr. Richie's affidavit does not directly conflict with his deposition testimony.

■ In addition, Dr. Richie's 1995 Report is not sworn testimony and, thus, cannot be considered in a sham affidavit inquiry. *See Franks*, 796 F.2d at 1237. Even if I could consider the 1995 Report, I would not find Dr. Richie's testimony a sham. In that report, Dr. Richie stated:

Th[e] direction [of the bullet path after it entered the skull] ... lined up perfectly with the two tears in the back shoulder area in both position and direction. This showed us the bullet was traveling upward from somewhere inferior to the shoulder wounds. The weapon would have had to be lower.... This unusual direction would be consistent with the handgun being bumped raising the barrel. This would cause the person holding the handgun to grip it to keep it from being knocked out of their hand which could cause it to discharge. This is my professional opinion of trying to determine what occúred [sic] for you.

*Defendants' Motion for Summary Judgment*, Ex. F, at 1–2. Dr. Richie drew conclusions, therefore, that are *only* consistent with Defendant Martinez's version of events. He does *not* conclude that Defendant Martinez's version of events is the only one consistent with the evidence. Nor does he conclude there is no possibility that "Preston Hill was shot in a prone position with the Defendant Martinez's gun very close to Mr. Hill's body." *Plaintiffs' Response*, Ex. 10, at 2. Consequently,

because his affidavit does not *directly* conflict with either his written report or his deposition, I will not disregard it.

Based on the affidavits of Dr. Richie and Mr. Paradis, I cannot say that no reasonable juror could find that Defendant Martinez's seizure of Preston Hill was unreasonable. For this reason I deny summary judgment on Plaintiffs' second claim against Defendant Martinez.

2.

Defendant Martinez also moves for summary judgment on Plaintiffs' second claim on the basis that he is entitled to qualified immunity. Because the law regarding excessive force was "clearly established when the alleged violation occurred," *Losavio*, 847 F.2d at 645–46, and because I concluded above that genuine issues of material fact exist regarding the reasonableness of Defendant Martinez's seizure of Preston Hill, summary judgment is inappropriate on Defendant Martinez's defense of qualified immunity.

D.

Defendants also move for summary judgment on Plaintiffs' claim for exemplary damages. Specifically, Defendants argue that Plaintiffs are not entitled to exemplary damages in the event I grant summary judgment with respect to all of the other claims. Because a separate cause of action for exemplary damages is not permissible, I construe Plaintiffs' "claim" for exemplary damages as part of their prayer for relief. Summary judgment on the question of exemplary damages is inappropriate since I have not dismissed all of the claims.

E.

Defendants' move to reconsider my order of November 12, 1999 granting Plaintiffs' motion to supplement their response to Defendants' summary judgment motion. Pursuant to my order, Plaintiffs supplemented their response with the affidavit by Calvin Stevenson. Alternatively, Defendants move for permission to file a supplemental reply in support of their motion for

summary judgment in order to address the new affidavit. Because I have not relied on Mr. Stevenson's affidavit, I deny Defendants' motion as moot.

Accordingly, IT IS ORDERED that:

(1) Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART;

(2) Plaintiffs' first claim for violation of their right to familial association is DISMISSED WITH PREJUDICE;

(3) Defendants' motion for reconsideration, or, in the alternative, for permission to file supplemental reply in support of motion for summary judgment is DENIED AS MOOT;

(4) the remaining claims are the second claim for use of excessive force in violation of the Fourth Amendment against Officer Martinez, and the third claim for deprivation of various rights secured by the United States Constitution against the City of Aurora. Both remaining claims are brought by Plaintiffs in their capacities as personal representatives of the estate of their son against the City; and

(5) The caption is AMENDED to reflect that Plaintiffs are no longer suing in their individual capacities.